**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| THOMPSON DESIGN GROUP, | : | |
| | : | |
| Plaintiff, | : | Civ. No. 05-2697 (GEB) |
| | : | |
| v. | : | **MEMORANDUM OPINION** |
| | : | |
| 1101-1125 HUDSON STREET LLC and | : | |
| GOTHAM PARTNERS, L.P., | : | |
| | : | |
| Defendants. | : | |
| | : | |

**BROWN, Chief Judge**

This matter comes before the Court upon defendants 1101-1125 Hudson Street LLC ("1101" or "Developer") and Gotham Partners, L.P.'s ("Gotham Partners") (collectively "Defendants") motion for partial summary judgment. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332. The Court, having considered the parties' submissions and decided the matter without oral argument pursuant to Federal Rules of Civil Procedure Rule 78, and for the reasons set forth below, will deny Defendants' motion for partial summary judgment.

## I.      BACKGROUND

### A.      The Parties

Plaintiff Thompson Design Group ("Plaintiff" or "TDG") is a corporation incorporated under Massachusetts law, with its principal place of business located in Boston, Massachusetts.

(Compl. ¶ 5.)  Jane Thompson is TDG's director and sole shareholder.  (Thompson Dep. at 11, 15-17.)

Defendant 1101 is a limited liability company organized under Delaware law.  (Compl. ¶ 6.)  Defendant Gotham Partners is a limited partnership organized under New York law.  (Defs.' Statement of Facts ¶ 16.)  During the periods that are relevant to this case, Gotham Partners was a member of 1101.  (Compl. ¶ 6.)

The present action concerns the development of a parcel of approximately 24 acres of waterfront property in Hoboken, New Jersey ("Project").  (*Id.* ¶¶ 1, 8.)  On or about December 16, 1999, TDG entered an agreement with the Developer to provide its services for the Project ("Agreement").  (Klafter Certification Ex. A (Agreement) at 1.)  During the course of TDG's performance of the Agreement, neither TDG nor Ms. Thompson were licensed to practice architecture in New Jersey.  (Pl.'s Counter-Statement of Facts at 10.)  The parties dispute whether the Agreement required such a license.

### B.    The Agreement

The Agreement states that TDG "is in the business of designing, planning, programming, and otherwise assisting in the development and redevelopment of real property," and that it "has represented to the Developer that it has the necessary knowledge and expertise to assist the Developer with regard to the Project, its concepts, realization, and approval . . . ."  (Agreement at 1.)  The Agreement provides that TDG was retained "to act as a consultant to the Developer on the terms and conditions" set forth in the Agreement.  (*Id.*)  It further provides that TDG "agrees to work in association with Dean Marchetto Architects, of Hoboken, New Jersey," and to credit

2

the work to "Thompson Design Group, Inc., architects/planners/urban designers, in association with Dean Marchetto Architects." (*Id.*)  The Agreement repeatedly uses the term "Architect/Designer" in referring to TDG.  (*See id.*)

Section 2 of the Agreement describes the services that TDG agreed to provide, specifically with reference to the three distinct phases that were planned for the Project.  Section 2.1 states that TDG will "[c]omplete Phases 1 and 2 [of the Project], which includes Concept Program Development, Site Master Plan and Built Space Analysis and Plan, through Design Feasibility Study . . . for the purpose of achieving city approval for a total buildable project . . . ." (*Id.* § 2.1.)  Section 2.2 provides that TDG "is commissioned by Developer to create and realize concepts and designs for the Developer in connection with the Project, and to function as the Project leader in (but not limited to) Phase 1 and 2 master planning, functional planning, and overall design, working closely with Developer in all actions." (*Id.* § 2.2.)  The section further states that "[a]ll final decisions regarding concepts, designs and development for and of the Project shall be the Developer's, in its sole discretion." (*Id.*)  TDG was "charged with coordination of, and with, all consultants and their respective work, directing such consultants regarding the needs of the Project, of the Developer in connection with the Project, and of the design team in accomplishing the schedules, budgets, and goals for the form and function of the development." (*Id.*)

Phase 3 was defined as "the preparation of Schematic Design and Design Development Documents . . . ." (*Id.* § 2.3.)  The Agreement states that "such work will be on terms and conditions mutually agreed to in the future between Developer and Architect/Designer to be memorialized in writing." (*Id.*)

The Agreement includes an attachment that further defines the scope of the work that TDG agreed to perform.  (*Id.* Ex. A.)  The document, entitled "Proposal for Real Estate Development Planning," outlines TDG's tasks and the amount of time that it expected those tasks to require.  (*Id.* at 1-2.)  In a section labeled "Future Phases," the document also refers to the tasks associated with Phase 3, but provides only an overall estimate of time for the Phase 3 tasks.  (*Id.* at 3.)

### C.      The Present Litigation

On May 20, 2005, Plaintiff filed the present lawsuit seeking payment for its services pursuant to the Agreement.  Plaintiff asserts four claims against Defendants:  (1) breach of contract; (2) unjust enrichment; (3) conversion; and (4) fraud.  (Compl. ¶¶ 25, 32-35, 38-39, 42-47.)  On June 2, 2006, Defendants filed the present motion for partial summary judgment.  The case was reassigned to the undersigned on November 15, 2006.  Briefing on the matter now complete, the Court will address the pending motion.

## II.    DISCUSSION

### A.      Standard of Review

In deciding a motion for summary judgment, a court should grant the motion if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1366 (3d Cir. 1996).  The threshold inquiry is whether "there are any genuine factual issues that properly can be resolved only by a

finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In deciding whether triable issues of fact exist, the court must view the underlying facts and draw all reasonable inferences in favor of the non-moving party. *See Hancock Indus. v. Schaeffer*, 811 F.2d 225, 231 (3d Cir. 1987). In arguing against a motion for summary judgment, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

### B.   Breach of Contract Claims Pursuant to New Jersey Law

To prevail on a breach of contract claim, a plaintiff must prove that a valid contract exists, that the defendant materially breached the contract, and that the plaintiff suffered damages as a result of the breach. *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 421 F. Supp. 2d 831, 833 (D.N.J. 2006) (citing *Coyle v. Englander's*, 199 N.J. Super. 212, 223 (App. Div. 1985)). In order for a valid contract to exist, the plaintiff must show mutual assent, consideration, legality of the object of the contract, capacity of the parties, and formulation of memorialization. *Id.* (citing *Cohn v. Fisher*, 118 N.J. Super. 286, 291 (Law Div. 1972)).

If the court finds, however, that the contract at issue is illegal, "it is the policy of the law to leave the parties where it finds them, and to deny relief to both sides." *Dalton, Dalton, Little, Inc. v. Mirandi*, 412 F. Supp. 1001, 1003 (D.N.J. 1976). New Jersey courts "have consistently held that public policy precludes enforcement of a contract entered into in violation of [a] licensing statute." *Accountemps Div. of Robert Half of Phila., Inc. v. Birch Tree Group, Ltd.*, 115 N.J. 614, 626 (1989). As the New Jersey Supreme Court has observed, "where a licensing

5

statute is enacted to protect the public from fraud or incompetence, failure to comply with the licensing requirement generally renders the contract unenforceable." *Id.*

The New Jersey Supreme Court, however, has also described circumstances where this general rule should not apply. According to the court:

> The statute may be clearly for protection against fraud and incompetence; but in very many cases the statute breaker is neither fraudulent nor incompetent. He may have rendered excellent service or delivered goods of the highest quality, his non-compliance with the statute seems nearly harmless, and the real defrauder seems to be the defendant who is enriching himself at the plaintiff's expense. Although many courts yearn for the mechanically applicable rule, they have not made one in the present instance. Justice requires that the penalty should fit the crime; and justice and sound policy do not always require the enforcement of licensing statutes by large forfeitures going not to the state but to the repudiating defendant.

*Id.* at 626-27 (quoting 6A *Corbin on Contracts* § 1512 (1962)).

### C.      Whether the Agreement Is Unenforceable as a Matter of Public Policy

#### 1.      The Parties' Arguments

Defendants argue that they are entitled to judgment as a matter of law with respect to Plaintiff's contract claims against them. According to Defendants, the Agreement is "an illegal contract under governing New Jersey law," and Plaintiff's contract claims should be barred as a matter of public policy. (Defs.' Br. at 1.) Defendants claim that "[t]he illegality [of the Agreement] arises because [TDG] is seeking to recover fees for architectural and planning services, while it has never been licensed to practice architecture or planning under New Jersey law." (*Id.*) Specifically, Defendants cite N.J. Stat. Ann. 45:3-10, which states:

> No person except an architect licensed in the State of New Jersey shall engage in the practice of architecture, use the title 'architect' or its substantial equivalent or otherwise represent to the public that that person is licensed to

6

practice architecture in this State.

       Any single act or transaction shall constitute engaging in business or in the practice of architecture within the meaning of this chapter.

N.J. Stat. Ann. 45:3-10.

Defendants identify various examples of TDG and Ms. Thompson's use of the term "architect" in describing themselves, as well as their use of the term "architecture" in describing their work.  First, Defendants cite the Agreement, which repeatedly identifies TDG as "Architect/Designer," as well as "architects/planners/urban designers[.]"  (*See* Agreement at 1.) Second, Defendants also refer to the Agreement's description of the services that TDG agreed to provide, and claim that those services constitute "architectural services" requiring a license to practice in New Jersey.  (*Id.* § 2, Ex. A at 1-3.)  Third, Defendants refer to the final site plans that TDG submitted, which identify TDG as planners, architects, and urban designers.  (Klafter Certification Ex. K at 1.)  Fourth, Defendants refer to various documents that they received from TDG during the course of the Project, including correspondence and draft contracts, that refer to TDG's work on the Project as architecture, planning, and urban design.  (*Id.* Exs. F, G.)  Fifth, Defendants cite Ms. Thompson's resume, which describes the work that she has performed as architecture and planning.  (*Id.* Ex. I.)  Sixth, Defendants refer to Ms. Thompson's deposition testimony that TDG was retained as "lead architect" for the Project, and that it engaged in work that could be characterized as architectural services.  (Thompson Dep. at 63, 104-06, 143, 162-66.)

Plaintiff, in contrast, argues that it agreed to provide development planning and consulting services, and that such work does not require a license to practice architecture in New

Jersey.  (Pl.'s Br. at 6-7.)  Plaintiff argues that it was responsible for only the First and Second

Phases of the Project, *i.e.* concept program development and feasibility study, and that such work

was not architectural in nature.  (Agreement § 2, Ex. A at 1-2.)  In arguing that it provided

planning rather than architectural services, Plaintiff identifies various sections of the Agreement

referring to the work that it agreed to perform as real estate development planning.  (*Id*.)

Plaintiff further claims that the Developer was aware that it was not licensed as an

architect in New Jersey.  (Pl.'s Br. at 7-8.)  In support of its argument, Plaintiff refers to a

memorandum dated November 8, 1999.  (Shapiro Aff. Ex. E at 1.)  That memorandum was sent

by Mr. Shapiro, an attorney who negotiated the Agreement on TDG's behalf, to Mr. Zipkowitz,

the Developer's attorney.  (*Id.* ¶ 6, Ex. E at 1.)  In that memorandum, Mr. Shapiro states that

"[TDG] is not providing any insurance" because "[it] is not being retained as the architect on the

project . . . ."  (*Id.* Ex. E at 1.)  Plaintiff also refers to Mr. Zipkowitz's proposed revision of a

draft version of the Agreement, which revision stated:  "Architect to Rep. fully licensed, etc."

(*Id.* Ex. B at 12.)  TDG refused to add the representation that it was "fully licensed," and that

language was not included in the Agreement.  (*See* Agreement §§ 16-17.)

## 2.      Applicable Case Law

In *Costello v. Schmidlin*, 404 F.2d 87 (3d Cir. 1968), the Third Circuit Court of Appeals

explained the circumstances under which a court should not find an agreement to be illegal

despite the service provider's violation of a licensing statute.  In that case, a professional

engineer sued to recover payment for services that he provided to the defendant architect.

*Costello*, 404 F.2d at 88.  The defendant had been hired by a municipal client to construct a pool

complex, and separately hired the plaintiff to provide engineering consulting services for the construction of the complex. *Id.* In defending against the plaintiff's contract claims, the defendant argued that the agreement was illegal because the plaintiff was not licensed to practice in New Jersey. *Id.* at 89. The district court concluded that the contract was illegal, and entered judgment in favor of the defendant. *Id.*

In reviewing the district court's decision, the Court of Appeals observed that statutes requiring professional licenses "'are designed to protect the public from being imposed upon by persons not qualified to render a professional service.'" *Id.* at 93 (quoting *Kennoy v. Graves*, 300 S.W.2d 568, 570 (Ky. 1957)). The court noted, however, that "'[t]he reason for the rule denying enforceability does not exist when persons engaged in the same business or profession are dealing at arms length with each other.'" *Id.* (quoting *Kennoy*, 300 S.W.2d at 570). The court found it significant that the parties "contracted with knowledge of each other's respective professional qualifications," that "no reliance was placed by defendant upon the existence of a New Jersey professional engineer's license," and that "[the] contract provided that plaintiff was only to furnish consulting engineering services to defendant." *Id.* at 94. Based on these facts, the court found in favor of the plaintiff and reversed the district court's decision. *Id.*

Defendants argue that the Agreement is an illegal contract because TDG was not licensed to practice architecture in New Jersey. In support of their argument, Defendants cite *Dalton, Dalton, Little, Inc. v. Mirandi*, 412 F. Supp. 1001 (D.N.J. 1976). In *Dalton*, a Maryland corporation brought suit against a defendant property owner, seeking to recover fees for its services in preparing and certifying plans and specifications for a building to be constructed in New Jersey. *Dalton*, 412 F. Supp. at 1002. The defendant owner argued that the plaintiff was

not entitled to the fees because it was not licensed to practice architecture in New Jersey, thereby rendering the agreement illegal. *Id.*

The court ruled in favor of the defendant, holding that the agreement was illegal and that the plaintiff therefore could not recover on its contract claims. *Id.* at 1007. The court explained that "there is no issue of fact about whether the services called for a license; the contract is expressly for architect's services, using the standard AIA printed form." *Id.* at 1006. The court distinguished the case from *Costello*, observing that the plaintiff was "dealing directly with [a] lay client, and not a consultant to a New Jersey licensed professional." *Id.*

### 3. Defendants' Motion for Partial Summary Judgment Should Be Denied

The Court finds the reasoning in *Costello*, rather than that in *Dalton*, applicable to the present case. Here, the Developer is a business entity that was represented by an attorney during the negotiation of the Agreement. The Agreement, however, does not expressly state that TDG or its employees were licensed to practice architecture in New Jersey, or that they would provide services as licensed architects. (*See* Agreement at 1-2.) It states instead that TDG "is in the business of designing, planning, programming, and otherwise assisting in the development and redevelopment of real property," and that it "has represented to the Developer that it has the necessary knowledge and expertise to assist the Developer with regard to the Project, its concepts, realization, and approval . . . ." (*Id.* at 1.) Rather than serving as a licensed architect, the Agreement provides that TDG would "act as a consultant to the Developer . . . ." (*Id.* § 1.) The Agreement further provides that TDG was to perform its services while "working closely

with Developer in all actions." (*Id.* § 2.2.)  It further states that "[a]ll final decisions regarding concepts, designs and development for and of the Project shall be the Developer's, in its sole discretion." (*Id.*)

In addition to the Agreement itself, Plaintiff's argument is further supported by the November 8, 1999 memorandum that TDG's attorney sent to the Developer's attorney in the course of negotiating the Agreement.  (Shapiro Aff. Ex. E.)  In that memorandum, TDG's attorney states that "[TDG] is not providing any insurance" because "[it] is not being retained as the architect on the project . . . ." (*Id.*)  Plaintiff's argument is also supported by the proposed revision of the Agreement that the Developer's attorney sent to TDG's attorney, stating: "Architect to Rep. fully licensed, etc." (*Id.* Ex. B at 12.)  TDG refused to add the representation that it was "fully licensed," and that language was not included in the Agreement.  (Agreement §§ 16-17.)

In short, although the parties agree that neither TDG nor Ms. Thompson were licensed to practice architecture in New Jersey, there remains a genuine issue concerning several material facts, namely:  whether TDG was retained as a licensed architect or as a consultant for development planning; whether the Developer believed that TDG and its employees were licensed to practice architecture; and whether the Developer relied on any such belief in entering the Agreement.  *See Costello*, 404 F.2d at 94.  Viewing the underlying facts, and drawing all reasonable inferences in favor of Plaintiff, the Court concludes that Defendants are not entitled to judgment as a matter of law.  *See Hancock Indus.*, 811 F.2d at 231.

**III.    CONCLUSION**

For these reasons, Defendants' motion for partial summary judgment is denied.  An appropriate form of order is filed herewith.


Dated:  January 31, 2007


                                       __ s/ Garrett E. Brown, Jr._____
                                       GARRETT E. BROWN, JR., U.S.D.J.